UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GREGORY L. FISHER, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 21-13212 (RBK) (AMD) |
| | : | |
| v. | : | |
| | : | |
| CAMDEN COUNTY CORRECTIONAL | : | OPINION |
| FACILITY, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ROBERT B. KUGLER, U.S.D.J.**

I.     INTRODUCTION

Plaintiff, Gregory Fisher ("Plaintiff" or "Fisher"), is a pretrial detainee at the Camden County Correctional Facility ("CCCF") in Camden, New Jersey. He is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. § 1983 as well as under New Jersey state law. (*See* Dkt. No. 1). Plaintiff paid the filing fee.

This Court must screen the allegations of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit. For the following reasons, Plaintiff's complaint shall proceed past screening in part.

II.     BACKGROUND

The allegations of the complaint shall be construed as true for purposes of this screening opinion. Plaintiff names several Defendants in this action; they are as follows: (1) CCCF; (2)

C.F.G. Medical Enterprise; (3) Dr. R. Clemons; (4) Warden Karen Taylor; (5) Nurse J. Houston; (6) Nurse T. Governor; (7) Sergeant A. Kelly; (8) Sergeant Dearant; and (9) Sharon Bean.[1]

Petitioner arrived at CCCF in June, 2020. (*See* Dkt. No. 1-1 at 8). At the time, Plaintiff was prescribed suboxone for his opiate addiction. (*See id.*). In July and August, 2020, Defendant Houston harassed him for challenging her behavior with patients. (*See id.* at 3). In October, 2020, Defendant Governor created an "intense environment" during the distribution of patients' suboxone medication. (*See id.*). Governor told Plaintiff she was going to get Plaintiff "kicked off" his suboxone medication. (*See id.*). Ultimately, Defendant Clemons discontinued Plaintiff's suboxone medication on November 2, 2020. (*See* Dkt. No. 1 at 6; *see also* Dkt. No. 1-1 at 10). Clemons told Plaintiff she was discontinuing Plaintiff's medication because Plaintiff was causing problems with nurses when they distributed medication. (*See* Dkt. No. 1 at 6).

Plaintiff suffered from withdrawal, cravings, pain and suffering in the months that followed. In March, 2021, Clemons offered Plaintiff the opportunity to take a different medication for his addiction, namely sublocade. (*See id.*). Plaintiff would receive this medication once a month through an injection as opposed to suboxone's pill form. (*See id.*). Plaintiff shared his fears about sublocade with Clemons because his outside physician told him it would be best if he received "strips" or suboxone pills. (*See id.*). Clemons provided Plaintiff with a brochure to educate himself about sublocade. (*See id.*).

After Clemons took Plaintiff off of suboxone in November, 2020, Plaintiff filed numerous complaints and grievances. Plaintiff states he complained to Defendant Kelly about the nurses' behavior while they distributed medication on November 3, 2020 and November 10,

---

[1] Defendants Clemons, Governor, Kelly, Dearant and Bean are not listed in the caption of this case available on CM/ECF. However, Plaintiff clearly names them as Defendants in the body of his complaint. Therefore, the Clerk shall add these Defendants to the caption of this case.

2

2020 through grievances. (*See* Dkt. No. 1-1 at 4). Despite telling Plaintiff that he would investigate, Plaintiff never received a response to these grievances by Kelly. (*See id.*).

Plaintiff also complained to Defendant Dearant at Internal Affairs about the actions of the medical department doctor, nurses and Kelly. Dearant told Plaintiff she would investigate his complaints. (*See id.*). Dearant subsequently explained to Plaintiff that she had investigated his issues, spoke to Clemons and that Clemons was going to reinstate Plaintiff's suboxone medication. (*See id.*). However, Plaintiff was never put back on suboxone. (*See id.*)

In January, 2021, Plaintiff complained to Defendant Bean, who is in charge of the entire jail population, about the nurses behavior and Clemons' stated reason for taking him off suboxone. (*See id.* at 5; 8-10). Plaintiff also complained to Defendant Warden Taylor in January 2021 about the issues he was having with the medical department. (*See id.* at 2). However, Taylor never gave Plaintiff a response. (*See id.*).

Plaintiff asserts the Defendants violated his constitutional rights, the Americans with Disabilities Act ("ADA") and are liable under New Jersey state law for malpractice. As relief, Plaintiff seeks monetary damages and an injunction requiring the reinstatement of his medical treatment. (*See* Dkt. No. 1 at 6).

### III.    LEGAL STANDARD

District courts must review complaints in civil actions in which a prisoner seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions. *See* 42 U.S.C. § 1997e. District courts are directed to *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b).

The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915A(b) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 42 U.S.C. § 1997e(c)(l)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, are liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

> injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

IV.  DISCUSSION

A.  Clemons

Plaintiff sues Clemons under three different theories: (1) deliberate indifference to his serious medical needs under the United States Constitution filed pursuant to § 1983; (2) the ADA; and (3) malpractice. For the following reasons, Plaintiff's deliberate indifference and malpractice claims shall proceed past screening but his ADA claim shall be dismissed without prejudice.

i.  *Section 1983*

Plaintiff's claim for deliberate indifference to his serious medical needs is analyzed under the Fourteenth Amendment as Plaintiff is a pretrial detainee as opposed to the Eighth Amendment.[2] *See Tapp v. Brazill*, 645 F. App'x 141, 145 n.4 (3d Cir. 2016). Nevertheless, the Eighth Amendment's "deliberate indifference" standard provides a guide to what, at a minimum,

---

[2] Plaintiff sues the other Defendants in this action also under the Eighth and Fourteenth Amendments. However, because Plaintiff is a pretrial detainee, those claims will also be analyzed under the Fourteenth rather than the Eighth Amendment throughout this opinion.

is owed to pretrial detainees. *See id.* (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)).

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse,* 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or medical malpractice do not trigger constitutional protections. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent,* 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir. 2012) (quoting *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))).

Plaintiff has stated a deliberate indifference claim under the Fourteenth Amendment against Clemons. At this stage of the proceedings, this Court will presume that Plaintiff has stated a serious medical need considering his prescription for suboxone. *See, e.g.*, *Mayne v. Clarke*, No. 08-5785, 2009 WL 2003396, at *4 (D.N.J. July 7, 2009) (proceeding claim that defendant was deliberately indifferent to plaintiff's serious medical needs when he interfered with plaintiff's prescription for suboxone). Additionally, Plaintiff has adequately alleged Clemons' deliberate indifference as he states that she prevented him from receiving necessary medical treatment based on a non-medical reason. More specifically, Plaintiff alleges Clemons refused Plaintiff his prescribed medication because of how he interacted with nurses, not for any medical reason. Indeed, Clemons purportedly understood the importance of Plaintiff receiving suboxone by telling him that she would provide him with it if/when he was released from CCCF. Thus, this claim shall proceed.

  ii.  *ADA*

Next, Plaintiff sues Clemons under the ADA. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under the ADA, Plaintiff must allege that he (1) is a qualified individual with a disability, (2) who was precluded from participating in a service, program, or activity, or otherwise was subject to discrimination; and (3) because of his disability. *See Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019). The phrase "service, program, or activity" is "extremely broad in scope and includes anything a public entity does." *Furgess*, 933 F.3d at 289 (footnote omitted).

Assuming *arguendo* that Plaintiff has adequately alleged the first two elements of stating an ADA claim, the complaint fails to allege that the purported inadequate medical care he received was *because of* his disability. Indeed, Clemons' statement to Plaintiff that she was taking him off suboxone was not *because of* his disability, but rather due to the interactions Plaintiff had with CCCF staff. *See Kokinda v. Pa. Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (footnote citation and internal quotation marks omitted) ("[T]he ADA prohibits disability-based discrimination, not inadequate treatment for the disability."). Thus, Plaintiff's ADA claim against Clemons is dismissed without prejudice for failure to state a claim upon which relief may be granted.[3]

    iii.    *Malpractice*

Plaintiff next sues Clemons for malpractice under New Jersey state law. To properly allege a malpractice claim in New Jersey, a plaintiff must allege (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury. *See Scott v. Manenti*, 781 F. App'x 65, 68–69 (3d Cir. 2019) (internal quotation marks and citations omitted). Based on the foregoing allegations described *supra* against Clemons, Plaintiff's medical malpractice claim against Clemons shall proceed.

B. <u>Houston</u>

Plaintiff sues Defendant Houston for her verbal taunts and threats to take Plaintiff off of his suboxone medication in July and August, 2020. More specifically, he sues her under: (1) Fourteenth Amendment for cruel and unusual punishment; and (2) malpractice. For the following

---

[3] Plaintiff attempts to bring ADA claims against the other Defendants in this case. However, Plaintiff's ADA claims against those Defendants are dismissed for similar reasons as he fails to allege any purported discrimination was *because of* his purported disability.

reasons, Plaintiff's claims against Houston are dismissed without prejudice for failure to state a claim.

    i.    *Section 1983*

Threats and verbal harassment are certainly be deplorable. However, they alone are insufficient to state a claim for relief under § 1983. *See Stepney v. Gilliard*, No. 02–5259, 2005 WL 3338370, at *6 (D.N.J. Dec. 8, 2005) ("[V]erbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under [Section] 1983."). Plaintiff's § 1983 claim against Houston under the Fourteenth Amendment relates to taunts or threats. Accordingly, this claim is dismissed without prejudice for failure to state a claim upon which relief may be granted. Indeed, it was Clemons, not Houston who was responsible for taking Plaintiff off his prescribed suboxone medication according to the allegations of the complaint.

    ii.    *Malpractice*

Plaintiff also fails to state a malpractice claim against Houston. Clemons had the duty of care for treating Plaintiff and took Plaintiff off his suboxone medication, not Houston. Thus, Plaintiff's medical malpractice claim against Houston is also dismissed without prejudice for failure to state a claim.

C. Governor

Plaintiff's claims against Governor are similar to those against Houston with the exception that Governor's purported harassment and threats occurred in October, 2020 as opposed to July and August 2020. For similar reasons though as discussed in analyzing

Plaintiff's claims against Houston, Plaintiff's claims against Governor are dismissed without prejudice for failure to state a claim upon which relief may be granted.

  D. Kelly

Plaintiff next sues Kelly under similar theories as the other Defendants; namely: (1) the Fourteenth Amendment for cruel and unusual punishment; and (2) malpractice. Plaintiff claims Kelly is liable because he never responded to Plaintiff's grievances about how the nurses were treating him. (*See* Dkt. No. 1-1 at 4).

  i.  *Section 1983*

"A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior.*" *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Id.* "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Id.*; *see also Baker v. Monroe Twp.,* 50 F.3d 1186, 1190–91 (3d Cir. 1995) (a plaintiff "must show that a policymaker for the [municipality] authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence." (citation omitted)).

"The filing of grievances, alone, is insufficient to show the actual knowledge necessary for personal involvement." *Miller v. Trometter,* No. 11–811, 2012 WL 5933015, at *13 (M.D. Pa. Nov. 27, 2012) (citing *Rode,* 845 F.2d at 1207). Thus, "prison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them." *Miller,* 2012 WL 5933015, at *13 (citing *Pressley v. Beard,* 266 F. App'x 216 (3d Cir. 2008) (per curiam); *Hughes v. Smith,* 237 F. App'x 756, 758 (3d Cir.2007) (per curiam))

(other citations omitted); *see also Robinson v. Green,* No. 12–1212, 2012 WL 5401079, at *3 (E.D. Pa. Nov. 5, 2012); *Mercado v. Ellis,* No. 11–6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiffs only claims against the named defendants are based on their failure to investigate or respond to Plaintiffs letters and grievances. These claims fail to rise to the level of a constitutional deprivation sufficient to state a claim under § 1983. Indeed, an allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim.") (internal quotation marks and citations omitted).

Plaintiff bases his civil rights claim against Kelly for his failure to respond to his grievances against the nurses. This alone is insufficient to state a § 1983 claim. Furthermore, Plaintiff failed to allege an underlying constitutional claim against the nurses for their harassing behavior and verbal taunts. Thus, any purported failure on the part of Kelly in failing to respond would also not give rise to § 1983 claim because there was no underlying constitutional violation. *See, e.g.*, *McDougal v. Orkies*, No. 17-469, 2017 WL 2778642, at *2 (S.D. Ill. June 27, 2017) (citing *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) ("Without an underlying constitutional violation to turn a blind eye to, [Defendant's] alleged failure to respond to Plaintiff's letters cannot constitute deliberate indifference."); *see also Stattuck-Knaebel v. Lewis*, No. 18-212, 2019 WL 1060034, at *8 (E.D. Mo. Mar. 6, 2019) ("Since plaintiff's underlying complaints, contained in his kites to Warden Lewis and Assistant Warden Reed, do not amount to constitutional violations, the failure by Lewis and Red to respond likewise do not constitute a violation of plaintiff's constitutional rights."). Furthermore, while it does not appear Plaintiff's claims against the nurses constituted a claim of a continuing violation, even if it did, Kelly's failure to respond would not raise a constitutional claim because Plaintiff failed to assert an underlying constitutional claim against the nurses he was complaining about. *Jones-El v. Wright*,

No. 16-502, 2018 WL 9811898, at *17 (E.D. Va. Sept. 28, 2018) (citing *Scott v. Clarke*, 64 F. Supp. 3d 813, 842 (W.D. Va. 2014) ("[T]o hold [Defendants] liable for failing to respond to continuing violations of Plaintiff's constitutional rights that they learned about through the grievance process, Plaintiff must show an underlying violation of Plaintiff's constitutional rights upon which [Defendants] failed to act."). Accordingly, Plaintiff's Fourteenth Amendment claim against Kelly is dismissed without prejudice for failure to state a claim upon which relief may be granted.

    ii.    *Malpractice*

Plaintiff's malpractice claim against Kelly will also be dismissed. As described above, Plaintiff failed to state a malpractice claims against the nurses. Thus, it follows that any purported failure by Kelly in not responding to Plaintiff's grievances on these issues against the nurses also fails to state a claim upon which relief may be granted.

E. <u>Dearant</u>

Plaintiff next sues Defendant Dearant, an Internal Affairs Sergeant, under the Fourteenth Amendment and for malpractice. Plaintiff filed grievances to Dearant on several occasions complaining about the medical department doctor (presumably Clemons) as well as the actions of the nurses and inaction of Kelly in response to his grievances about the nurses. (*See* Dkt. No. 1-1 at 4). Plaintiff explains that Dearant told him she spoke to Clemons who was going to reinstate his suboxone medication. (*See id.*). However, Plaintiff states his suboxone medication was never reinstated by Clemons.

Unlike Kelly, Plaintiff's claims against Dearant shall be permitted to proceed, but only to the extent Plaintiff's claims relate to Dearant's failure to act to Plaintiff's grievances against Clemons. Plaintiff's claim against Dearant relates to his purported grievances alleging an

12

ongoing violation, namely the continued denial of adequate medical care by Clemons. A plaintiff may state a claim by alleging that a supervisory defendant reviewed a grievance where the plaintiff alleges an ongoing violation. *See Carter v. Smith*, No. 08-279, 2009 WL 3088428, at *6 (E.D. Pa. Sept. 23, 2009) (internal quotations omitted); *see also Whitehead v. Rozum*, No. 11-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012) ("In the prison setting, where a grievance alleges an ongoing constitutional violation, a supervisory defendant who reviews it is personally involved in that violation because he is confronted with a situation he can remedy directly.") (internal citations omitted). Thus, Plaintiff's claims against Dearant shall proceed with respect to Dearant's failure to act on Plaintiff's grievances against Clemons. To the extent though that Plaintiff asserts claims against Dearant for his failure to act on his grievances against the nurses and Kelly, it fails for the same reason as do his claims against Kelly described *supra*.

F. Bean

Defendant Bean oversees the whole jail population. (*See* Dkt. No. 1-1 at 5). In January, 2021, Plaintiff complained to Bean regarding being taken off of his suboxone medication by Clemons via a letter. (*See* Dkt. No. 1-1 at 8-10). Bean never responded to Plaintiff's complaint. (*See id.* at 5). While Plaintiff does not expressly state what theories he is suing Bean under, this Court will presume it is like the other Defendants; namely under the Fourteenth Amendment and for malpractice.

Like Plaintiff's allegations against Dearant, Plaintiff's complaints to Bean relate to the purported ongoing violation occurring due to Clemons providing Plaintiff inadequate medical care. Thus, for similar reasons as discussed with Dearant, Plaintiff's claims against Bean under the Fourteenth Amendment and for malpractice shall proceed past screening.

13

G. Taylor

Defendant Taylor is the warden at CCCF. (*See* Dkt. No. 1-1 at 2). Plaintiff filed numerous grievances to Taylor informing her of what was "going on in her facility by the medical department." (*See id.*). These grievances included complaints about Plaintiff's pain, suffering and withdrawal. Taylor never responded to Plaintiff's grievances. (*See id.*). Plaintiff sues Taylor under the Fourteenth Amendment and for malpractice.

For the reasons previously discussed with Defendants Dearant and Bean, Plaintiff's Fourteenth Amendment and malpractice claims against Taylor shall proceed past screening.

H. CCCF

Plaintiff next names CCCF as a Defendant. He claims CCCF employs all the named individual Defendants whose negligence led to his pain and suffering. He sues CCCF under the Fourteenth Amendment and for malpractice.

Plaintiff's claim under § 1983 pursuant to the Fourteenth Amendment against CCCF is dismissed with prejudice for failure to state a claim upon which relief may be granted. Indeed, a county jail is not a "person" amenable to suit under § 1983. *See, e.g.*, *Coleman v. Corizon Med.*, No. 18-4611, 2019 WL 5704501, at *3 (D.N.J. Nov. 5, 2019); *Walker v. Cty. of Gloucester*, No. 15-7073, 2018 WL 1064210, at *3 (D.N.J. Feb. 27, 2018) (collecting cases); *see also Boomer v. Lewis*, 541 F. App'x 186, 192 (3d Cir. 2013).

However, at this early stage of the proceedings, Plaintiff's claim for malpractice against CCCF shall be permitted to proceed based on vicarious liability given that he alleges CCCF employs all the named individual Defendants. *See Spositi v. Reycheck*, No. 16-2448, 2017 WL 6539231, at *4 (D.N.J. Dec. 21, 2017) (noting employer of individual defendants can be vicariously liable for malpractice under respondeat superior).

14

I. <u>C.F.G. Medical Enterprise</u>

Finally, Plaintiff sues C.F.G. Medical Enterprise. (*See* Dkt. No. 1 at 4). This Defendant provides the medical service of doctors and nurses at CCCF for detainees. (*See id.* at 5).

Plaintiff's claim against C.F.G. Medical Enterprise under the Fourteenth Amendment shall be dismissed without prejudice for failure to state a claim. A defendant in a federal civil rights matter may not be held liable based solely on his role as a supervisor, but instead to be held liable must have had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (civil rights defendants may not be held liable under *respondeat superior* theory of liability). This generally requires a plaintiff to plead facts showing either the supervisory defendant's "participation [in the alleged wrong], or ... actual knowledge and acquiescence [in his subordinate's wrongdoing], to be liable." *Tenon v. Dreibelbis*, 606 F. App'x 681, 688 (3d Cir. 2015); *see also Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316-20 (3d Cir. 2014), *rev'd on other grounds*, 135 S. Ct. 2042 (2015). In the case of an outside contractor, such as C.F.G. Medical Enterprise, a plaintiff must instead plead that the contractor adopted a policy, practice, or custom which was ultimately responsible for the alleged violation. *See Butler v. CFG Health Services, Inc.*, No. 21-13354, 2022 WL 138085, at *3 (D.N.J. Jan. 12, 2022) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978) (other citations and footnote omitted) ("[T]o hold CFG Health Services liable for his injuries, Plaintiff must prove facts showing that this entity had a relevant policy or custom, and that policy violated his constitutional rights."). A corporate policy, practice, or custom must therefore be the "moving force" behind the alleged constitutional violation for a plaintiff to successfully plead a plausible claim for relief as to such a defendant. *See City of Canton v.*

*Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-36 (2010).

Plaintiff fails to state with any facial plausibility a policy, practice or custom on the part of C.F.G. Medical Enterprise giving rise to his injuries. Accordingly, his Fourteenth Amendment claim under § 1983 is dismissed without prejudice for failure to state a claim upon which relief may be granted.

Nevertheless, Plaintiff's malpractice claim against C.F.G. Medical Enterprise shall be permitted to proceed at this early screening stage based on vicarious liability. *See Spositi*, 2017 WL 6539231, at *4 (D.N.J. Dec. 21, 2017) (citing *Carter v. Reynolds*, 175 N.J. 402, 408 (2003); *Miller v. Lagana*, No. 15-2510, 2016 WL 1060417, at *4 (D.N.J. Mar. 17, 2016)).

V.     **MOTION TO APPOINT PRO BONO COUNSEL**

Finally, Plaintiff seeks the appointment of pro bono counsel. (*See* Dkt. No. 8). Indigent persons raising civil rights claims have no absolute right to counsel. *See Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). To appoint pro bono counsel, there must be some merit in fact or law to the claims the plaintiff is attempting to assert. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). Furthermore, in determining whether to appoint counsel, a court considers the following: (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether the plaintiff can attain and afford counsel on his own behalf. *See id.* at 155–56, 157 n.5; *see also Cuevas v. United States*, 422 F. App'x 142, 144–45 (3d Cir. 2011) (reiterating the *Tabron* factors). Additionally, the power to grant appointment of counsel lies solely with the

discretion of this Court. *See Tabron*, 6 F.3d at 155. Appointing counsel may be made at any point during the litigation *sua sponte* or by granting a party's motion. *See id.* at 156.

It is not entirely clear that Plaintiff is indigent. Indeed, Plaintiff paid the filing fee in this case. Thus, Plaintiff's motion for the appointment of pro bono counsel is denied without prejudice. If Plaintiff though can show his indigency, such as by filing an updated application to proceed *in forma pauperis*, he can refile a motion for the appointment of pro bono counsel that will be considered anew.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's ADA claims against the Defendants are dismissed without prejudice. Plaintiff's remaining claims against Defendants Houston, Governor and Kelly are dismissed without prejudice and these Defendants will be terminated from this case. Plaintiff's Fourteenth Amendment and malpractice claims shall proceed against Defendants Clemons, Dearant, Bean and Taylor. Plaintiff's Fourteenth Amendment claims against CCCF is dismissed with prejudice, but Plaintiff's malpractice claim against CCCF shall proceed. Plaintiff's Fourteenth Amendment claim against Defendant C.F.G. Medical Enterprise is dismissed without prejudice, but Plaintiff's malpractice claim against C.F.G. Medical Enterprise shall proceed. Plaintiff's motion for the appointment of pro bono counsel (Dkt. No. 8) is denied without prejudice. An appropriate order will be entered.

DATED: May 20, 2022                                    s/ Robert B. Kugler
                                                       ROBERT B. KUGLER
                                                       United States District Judge